No. 19,740.

R. A. TIDBALL, *Appellee*, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. TRIAL—*Misconduct of Counsel.* Misconduct of counsel and the trial court's ruling thereon considered and held not so serious as to require a reversal.

2. RAILWAY TRACKS—*Failure to "Look and Listen" Not Always Negligence.* The duty to look and listen before crossing a railway track does not relate to a situation where the railroad train is standing at the edge of a crossing and where the railway's employee gives a signal and invitation to cross.

3. RAILROAD ACCIDENT—*Damages to Wagon, Harness and Driver—Verdict Not Excessive.* While plaintiff on a public street was driving a horse and wagon over a railroad crossing, by the edge of which a number of freight cars were standing, the cars were suddenly backed into his wagon, breaking it, tearing his harness, and throwing him out and injuring him. The evidence touching plaintiff's damages examined and a verdict for $535 held not excessive.

Appeal from Wyandotte district court, division No. 2: FRANK D. HUTCHINGS, judge. Opinion filed March 11, 1916. Affirmed.

*W. W. Brown, James W. Reid,* both of Parsons, and *A. L. Berger,* of Kansas City, for the appellant.

*David F. Carson,* and *William K. Ward,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The appellee was given judgment against the appellant for personal injuries and for damages to his wagon and harness in a collision at a railway crossing on a street in Rosedale.

Appellee testified that as he was about to cross the defendant's railway tracks at Rosedale, a switch engine and a number of cars passed the crossing and stopped and the defendant's employee beckoned to him to cross and said "Come on." He started to drive across, but before his wagon had cleared the tracks the cars suddenly backed, smashed his wagon and threw him out. Three of the defendant's employees and another witness, the flagman of another railway company which also had a crossing on the same street about sixty feet distant, testified that he was not signalled or told to cross but on the contrary was told by one of them, "Stop," "Wait a minute," but the jury chose to believe the appellee and to disbelieve the defendant's witnesses.

The errors assigned are: (1) misconduct of counsel; (2) instructions given and refused; and (3) excessive verdict.

1. From the record it appears that the conduct of counsel for the appellee was subject to criticism. He insinuated before the jury that a rough draft of a map used to explain the location of the scene of the accident was made for the purpose of suggesting to a witness for defendant how he should testify, that it had "been blocked out for him . . . and he just testifies to what counsel has already made up for him." He repeatedly accused the defendant's counsel and a witness for defendant of having procured the names of other witnesses not used at the trial, leaving it to be inferred by the jury that the defendant was withholding the testimony of witnesses un-

Tidball v. Railway Co.

favorable to defendant, and he made a spectacular demand before the jury for the production of the statements of bystanders who saw the accident. There was no evidence to show that the railway's employees or its counsel had procured such statements nor any evidence of the existence of such documents. There was a good deal of this sort of performance, all of which was improper, and the court should have firmly suppressed it. Eventually the trial judge seems to have taken a tighter grip on the discipline of his court, by saying:

"The Court: It seems to me that that thing on both sides is foolishness. These men that are on this jury are sensible men, and all this by-play I don't think will have any effect upon them and it ought not to be indulged in.

.    .    .    .    .    .    .    .    .    .    .    .    .

"The Court: There is nothing to prevent counsel asking you to produce anything that he thinks you have got, but he understands, I suppose, that you are not bound to produce anything of that kind, and if he wants to see it there is a regular way to get it. That is why I say it is no— . . . statements of this kind ought not to be indulged in. · Go ahead."

This showing goes almost to the border line where a reversal would be required, but the court's remarks are in the nature of a finding that the jury would not be affected by it, and with some reluctance we will let it stand.

2. Objection is made because the court did not instruct the jury as to the stereotyped rule that the defendant must look and listen before crossing the track. The rule had no application here. What good would it do to look and listen in such a case? Looking, he would see the cars and the signal to cross. He did see them. Listening, he would have heard nothing but what he did hear—the railway employee's invitation to "come on." The court did instruct the jury that the appellee was bound to use reasonable and ordinary care and that his failure to do so or his contributory negligence would bar a recovery.

3. It is urged that the verdict is excessive. The appellee testified that the damage to his harness was $3; that he paid a blacksmith $10 to repair the wagon; that he paid $4 or $5 for drugs and bandages; that his earning capacity was $4.40 per day and he was unable to work for seven weeks. This showed damages amounting to about $233.60, and consequently the allowance for pain, suffering, and permanent in-

juries was about $300. Hardly an excessive allowance, when we accept as true the jury's findings; and this, the appellant's counsel will not gainsay, we are bound to do.

The judgment is affirmed.

PORTER, J. (dissenting) : Several times in the course of the trial the court was requested to rule upon objections made to the conduct and statements of plaintiff's counsel in the presence of the jury. I think some of these objections should have been sustained and that the defendant was prejudiced by the refusal of the court to rule one way or the other. At different stages of the trial the court would have been justified, I think, in discharging the jury and continuing the case. Some of the proceedings bear little resemblance to an orderly trial in a court of record, and I think a new trial should be ordered.

MARSHALL, J., concurs in this dissent.