No. 22,029.

WESLEY MISCHLICH, *Appellee,* v. MORRIS & COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Improper Conduct of Counsel and Jurors During Trial—Refusal to Discharge Jury—No Prejudicial Error.* In a workmen's compensation case, a physician and surgeon testified for defendant that he had examined the plaintiff's injury, and that the alleged stiffness of the ankle was accounted for by keeping the ankle bandaged and failing to exercise it. At the defendant's request, the plaintiff was called and removed his shoe and stocking; the physician examined it in the presence of the jury and testified that if plaintiff would relax the muscle there was normal movement, but that plaintiff was holding his ankle rigid by his own will. Thereupon, plaintiff's counsel asked the jurors to come and examine plaintiff's ankle and see whether or not it was stiff. Over the defendant's objections, two of the jurors came and personally examined the ankle. The court refused the defendant's request that the jury be discharged. *Held,* that the question whether under all the circumstances the jury should have been discharged was in the sound discretion of the court; that there was no abuse of discretion in refusing the request, and no error in denying a new trial.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed June 7, 1919. Affirmed.

*L. W. Keplinger,* and *C. W. Trickett,* both of Kansas City, for the appellant.

*David F. Carson,* of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In an action for workmen's compensation, plaintiff recovered judgment, and the defendant appeals.

The plaintiff claimed that on the 10th day of October, 1915, while in the employ of the defendant at its packing house, he sustained an injury to his ankle which produced a stiffening and hardening of the bone, described as ankylosis; that the injury resulted in the loss of the use of the ankle and part of the leg; and that the condition is permanent. He testified that while working at night, in charge of a cold-storage room, he

stepped upon a loose board which broke, causing him to fall and sprain his foot and ankle; that he did not return to work for three weeks, when he worked two or three nights, but was unable to continue; that he was discharged by the foreman; and that it was a year and three months before he was able to do any work.

The defendant sought to show that if plaintiff suffered any accident he sustained only a trifling injury, and that the condition of his ankle was caused by keeping it constantly bandaged and by the failure to use it. The defendant also contended that the plaintiff first claimed he was injured on October 24, and that he was absent from work not to exceed eleven days, and was discharged for refusing to obey orders. One of the witnesses for the defendant was its general timekeeper, who produced the pay rolls of the plant for the last six months of the year 1915, and which showed that the plaintiff received his regular wages from October 10 to October 24, and that he worked from November 4 until December 2, when he was discharged. The timekeeper testified that when a man reports for work he calls at the time office and is given a check; and that after he has completed his work he drops the check in the same window where he received it in the morning and gets credit on the pay roll for the work he has performed. The defendant offered the evidence of several of the plaintiff's neighbors and acquaintances to impeach his reputation for veracity, and the plaintiff offered rebuttal testimony to sustain his reputation in this respect.

The jury returned a verdict for plaintiff, allowing him $990 compensation, and found that the plaintiff performed no work from October 10 to October 24, and that he did not go to work on November 4 and continue to work until about December 2.

The defendant contends that the verdict was given under bias and prejudice, and that this is evident from the findings, which it is insisted are contrary to the overwhelming evidence, including that of the books and records of the timekeeper. The point is urged, however, as a basis for the defendant's principal contention, which is, that the court committed error in refusing to discharge the jury because of an incident which occurred during the progress of the trial. The matter arose in this way: A physician and surgeon who had made an examina-

Mischlich v. Morris & Co.

tion of plaintiff's ankle about eight months after the alleged injury, was called by the defendant as a witness. He testified that when he first examined the plaintiff he found the ankle tightly bandaged, and the plaintiff walking with a cane; that he advised him to remove the bandage and to lay aside the cane and use his ankle; that otherwise he might have a stiff ankle; that he found no lost motion in the joint; but, in his opinion, keeping the ankle bandaged and walking with a cane accounted for the condition at that time, and also at the time of the trial in 1918. He testified, too, that at the first examination the plaintiff persisted in holding the ankle rigid, but that, upon distracting plaintiff's attention, he was able to move the joint freely, and that the reflex was practically perfect. During the examination of the physician as a witness, plaintiff at the defendant's request removed his shoe and stocking, and the physician proceeded to explain to the jury the condition of the ankle, and testified that if plaintiff would relax and let go of the tendon and muscle there was normal movement; that plaintiff was again holding his ankle rigid by his own will, so that it was almost impossible to move it, but that in the opinion of the witness there was no rigidity due to any injury. Thereupon, counsel for plaintiff asked the jurors to leave the jury box and personally feel and examine plaintiff's ankle and see whether or not it was stiff, and at his urgent solicitation two of the jurors came forward and personally examined plaintiff's foot. Counsel for defendant objected, and stated that he did not consider the practice proper, because some jurors would have evidence which others would not have, except by hearsay in the jury room. The court refused to make a ruling upon the objection, and the defendant asked that the jury be discharged, and supported the motion by an affidavit reciting the foregoing facts.

The motion to discharge the jury was overruled, and it is claimed that the court erred in this, and also in denying the motion for a new trial. The defendant contends that the situation was the same as where one or more members of the jury have visited the locality or scene of an accident, and subsequently have discussed or argued in the jury room facts discovered by them under such circumstances. The case of *Ortman v. U. P. Rly. Co.*, 32 Kan. 419, 4 Pac. 858, and cases cited

5—105 KAN.

in the opinion, are relied upon in support of the defendant's contention. In that case it was held that the personal examination of the premises where an accident occurred, and the knowledge thereby acquired by certain members of the jury, doubtless influenced them in arriving at their verdict, and may have controlled other jurors, and for this reason it was held that the verdict should have been set aside. and a new trial ordered. In view of the fact that the incident complained of in this case occurred in the presence of the judge of the district court, the majority take the view that the question whether the jury should have been discharged was one which rested under all the circumstances in the sound discretion of the trial court, and that it cannot be said that the court abused its discretion in refusing to discharge the jury, or that it was error to refuse a new trial.

The judgment is affirmed.

DAWSON, J. (dissenting) : I think the fact that two of the jurors left the box and personally inspected the plaintiff's alleged injuries was improper, and, I fear, prejudicial; and I am quite sure that the conduct of counsel was prejudicial, and so reprehensible that it ought to cause a reversal of the judgment, since there seems to be no other way to stop such misconduct.

In *Tidball v. Railway Co.*, 97 Kan. 396, 399, 155 Pac. 938, Mr. Justice Porter condemned such unseemly behavior. He there said:

"Several times in the course of the trial the court was requested to rule upon objections made to the conduct and statements of plaintiff's counsel in the presence of the jury. I think some of these objections should have been sustained and that the defendant was prejudiced by the refusal of the court to rule one way or the other. At different stages of the trial the court would have been justified, I think, in discharging the jury and continuing the case. Some of the proceedings bear little resemblance to an orderly trial in a court of record, and I think a new trial should be ordered."

Mr. Justice MARSHALL concurs in the dissent.