No. 29,913.

E. L. CRAIG, *Appellee*, v. ALICE SANDERS, *Appellant*.

(298 Pac. 792.)

Opinion filed May 9, 1931.

*John W. Adams* and *Ross McCormick*, both of Wichita, for the appellant.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald*, all of Wichita, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This action was in ejectment to recover possession of real property. A demurrer was sustained to the evidence of defendant. Judgment was for plaintiff. Defendant appeals.

The real estate in question consisted of a house and lot in Wichita. Appellee held the legal title to it. Appellant was in possession. She claimed title as the sole legatee and devisee under the will of M. J. Craig, the father of E. L. Craig, appellee. Her claim is and the claim of M. J. Craig during his lifetime was that E. L. Craig had given M. J. Craig, his father, the house and lot in payment for his staying in Wichita and conducting the business of the Headlight Gas Company for him.

The evidence of appellant was that in 1915 M. J. Craig was living in Texas. Appellant, his niece, was living with him. She kept house for him. Appellee asked M. J. Craig to move to Wichita and enter into a business with him, known as the Headlight Gas Company. M. J. Craig and appellant moved to Wichita in January, 1915, and he took charge of the business. He remained in charge of it from that time until his death. There was no contract as to what compensation M. J. Craig was to receive, and the evidence was that he drew from the company only what was necessary to live on.

About two years after M. J. Craig came up to Wichita, E. L. Craig went to California. When he returned he expressed satisfaction with the way the business had been run, and also expressed a desire for M. J. Craig to continue in its management. At this time M. J. Craig stated that he wanted to return to Texas. He said it was too cold in Kansas. The evidence of appellant was that E. L. Craig promised his father that if he would stay and run the business he would give him a house and lot. Mr. Craig agreed to stay on those terms. Some time in 1920 the lots in question were bought and the house built thereon. Appellant and her uncle moved into it and lived there till his death in 1926. Mr. Craig planted trees and shrubbery, rose bushes and a lawn, and did other things that owners do who have homes of which they are proud. The son did not give his father a deed to the place. On many occasions M. J. Craig requested this deed of E. L. Craig, but each time he was put off on one pretext or another. On one occasion there was a conversation between an insurance agent and M. J. Craig in the presence of E. L. Craig in which M. J. Craig referred to the place as "my place" and "my home." On another occasion E. L. Craig showed the house to some man and stated that he had built the house for his father. After the death of M. J. Craig in 1926, Alice Sanders, his niece, appellant and sole legatee and devisee under his will, continued to live in the house up to the time when this suit was brought. The clause in the will of M. J. Craig under which she claims is as follows:

"Fourth. I give, devise and bequeath to my niece, Alice Sanders, who has so faithfully cared for me these many years, all of my property, not heretofore disposed of, real, personal and mixed of every nature and kind whatsoever and wherever the same may be located or to whatever use same may have been put, to be hers absolutely and forever."

If the property belonged to M. J. Craig when he died, then it now belongs to Alice Sanders and she should prevail and the case should be reversed. If it belonged to E. L. Craig then he should prevail. The whole question is, Did the promise of E. L. Craig to his father and his father's performance operate to pass title?

Appellee says it did not, as such a contract comes within the statute of frauds. Appellant claims it did because M. L. Craig took possession of the house and lot and stayed in Wichita, did not go to Texas, continued to run the business and improved the place. She urges that all these things are sufficient facts and circumstances

connected with the contract to make it enforceable notwithstanding the statute.

The court below took the view that there was nothing about the contract and the performance of its terms by M. J. Craig to warrant a ruling that it was not within the statute of frauds.

We have seen that everything had been done by M. J. Craig as to his side of the contract. He had stayed in Kansas when he wanted to be in Texas. He had conducted the business. The son, E. L. Craig, had performed his side of the contract, all except the formal act of giving his father a deed to the real estate. He had bought the lot. He had built a house on it. He had set this house and lot apart and treated it as the property of his father. Under circumstances such as that, can it be said that there had not been sufficient performance of this contract to take it out from under the terms of the statute? What remained to be done? Nothing, as we have seen, except the formal act of executing and delivering a deed. It is conceded that R. S. 33-106 requires a contract to convey real estate to be in writing and that R. S. 67-401 provides that no trust concerning lands except such as may arise by implication of law shall be created unless in writing.

There is a well-recognized line of authorities which hold that where an oral contract for the conveyance of real estate has been performed by one of the parties, equity will give effect to the contract. In the case of *Meador v. Manlove*, 97 Kan. 706, 156 Pac. 731, this court, after the citation of a number of cases that support this rule, said:

"The gist of all these cases is that where an oral contract concerns interests in land which would ordinarily be invalid under the statute of frauds or the statute of trusts and powers has been performed by one of the parties, equity will give effect to the contract. This is sometimes done on the theory that the other party is equitably estopped to plead these statutes. Sometimes it is done by impressing the property which was the subject matter of the contract with a trust 'by implication of law' in favor of the party who had performed his part of the contract. Sometimes the trust has been impressed in favor of third parties—those for whose benefit the contract was made." (p. 712.)

In that case the court enforced a parol contract to make a will, by which real estate passed, on the theory that the contract had been fully performed by the one for whose benefit performance was decreed. The case has been followed many times in Kansas. (See

*Bateman v. Franklin,* 114 Kan. 183, 217 Pac. 318; *Falk v. Fulton,* 124 Kan. 745, 262 Pac. 1025.)

Appellee recognizes the rule laid down in the above cases and seeks to avoid the effect of them in the present case under the rule that where the party to a parol contract for the conveyance of real estate, who is seeking to enforce it on account of performance, can be compensated in money, then equity will not enforce the conveyance. He cites *Engelbrecht v. Herrington,* 103 Kan. 21, 172 Pac. 715, and *Roberts v. Roberts,* 130 Kan. 85, 285 Pac. 584. These cases sustain the rule contended for, but we have reached the conclusion that they are not in point in the case at bar. This case comes within the rule laid down in *Greiner v. Greiner,* 131 Kan. 760, 293 Pac. 759. There this court said:

"The court has no hesitation in saying that Mrs. Greiner did promise to give Frank land for a home if he would move back to Mitchell county. Just at· that point the promise was unenforceable because of indefiniteness. No particular land was specified. But the offer was later made perfectly definite. The eighty-acre tract was segregated for Frank, Mrs. Greiner fitted it for his occupancy as a home, and she gave him possession of it. . . . On the evidence favorable to him, and the inferences derivable from the evidence favorable to him, this court cannot say it would not be unjust to deny him a deed and to put him off, and cannot say a money judgment would afford him adequate relief." (p. 765.)

In the cases relied on by appellee the decision turns upon whether there is anything peculiar about the contract and the performance of its terms by the party seeking to enforce it that makes it impossible to compensate him in money. In the present case the evidence is that M. J. Craig wanted to go back to Texas where it was warmer, and where he would be more comfortable. He would never have consented to stay had it not been for the promise that he would be given a house and lot. The evidence is that he was anxious to have a home that he could leave the appellant, his niece, upon whom he looked as a daughter. It cannot be said that the forbearance of M. J. Craig to return to Texas, which may have shortened his days and which certainly made them less comfortable according to his viewpoint and desires, together with the services rendered in the conduct of the business, could be compensated in money.

We are bound to take as true the evidence offered by the defendant and to draw the inferences therefrom most favorable to the contention of the party offering it. (*Ratcliff v. Paul,* 114 Kan. 506,

220 Pac. 279.)   From the evidence offered in this case we conclude that there was sufficient evidence introduced at the trial on the question of whether there was a parol contract between M. J. Craig and E. L. Craig, whether this contract was fully performed by both parties, all except the actual giving of a deed by E. L. Craig, to make it imperative that the case should have been submitted to the jury on these issues.

The judgment of the lower court is reversed with directions to grant a new trial.