No. 34,385

ADA RICHARD, *Appellee*, v. GRANT R. KILBORN, *Appellant*.

(95 P. 2d 545)

Opinion filed November 10, 1939.

*H. W. Goodwin* and *W. H. Schwinn*, both of Wellington, for the appellant.

*W. L. Cunningham*, *D. Arthur Walker* and *Wm. E. Cunningham*, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action to recover for services rendered under an oral contract. Plaintiff prevailed, and defendant appeals.

Three principal contentions are made by appellant: That the claim was barred by the statute of limitations, that the contract was unenforceable under the statute of frauds, and that a mistrial should have been declared on account of improper comment made by the plaintiff's attorney in his argument to the jury.

The record is quite lengthy, with many details recited. However, for purposes of this review the story may be briefly told. Ada Richard, the appellee, is the former wife of Grant R. Kilborn, the defendant. They were married in 1920. For about two years Kilborn had work of various sorts, but with little financial success,

and became discouraged. Different plans to better their condition were discussed by the husband and wife, and he finally decided he would like to become a dentist, but had no means of financing such an education. Prior to her marriage the wife had been a stenographer and bookkeeper, and in September, 1922, he proposed to her that if she would get a job and pay their living expenses and his school expenses at a dental college he would fully repay her. She accepted the proposition. Defendant does not deny the agreement. The principal disagreement relates to the time of payment to which reference will later be made. The petition alleged that he agreed "as soon as he was able to borrow a sufficient sum of money to repay plaintiff and to finance the completion of the course himself, or at the death of his mother."

When the contract was made the Kilborns were living at Anthony, Kan., and Kilborn accompanied his wife to the office of an Anthony lawyer, where the plan was fully explained and where she secured a job. Kilborn entered a dental school in Kansas City. His wife worked for some time at Anthony and then went to Kansas City, where she found employment in a law office and where she continued to work, faithfully performing her part of the contract. She was evidently an efficient stenographer, earning at times $200 or more a month. The arrangement was continued throughout the dental course, and in June, 1927, Kilborn started to practice at Oxford, Kan. The plaintiff spent a few weeks at Oxford, but as Kilborn was not doing very well financially they agreed that she should return to Kansas City and resume her work in the law office, under the same arrangement. She continued her work there until the latter part of 1929, when as a result of domestic troubles, not made a part of this record, she secured a divorce. Five or six months thereafter the defendant remarried. Defendant did not make repayment. His mother died on December 24, 1936, leaving him property valued at about $8,000. In March, 1937, Mrs. Kilborn brought action on the contract in Sumner county. A demurrer to an amended petition was sustained and a second amended petition filed. Thereafter the plaintiff secured service of summons upon the defendant in Cowley county and dismissed the action pending in Sumner county. The petition filed in Cowley county is substantially the same as the second amended petition just referred to, but differs in some particulars from the petitions previously filed. Plaintiff alleged in her petition that from September 15, 1922, to October 1, 1929, she earned and advanced to the defendant $10,066.03. An itemized

account showing remittances covering that amount was set forth. The case was tried before a jury in January, 1939, and judgment rendered for the plaintiff for $6,213.51 with interest from December 24, 1936.

Appellant's specifications of error center around three propositions:

1. That the action was barred by the statute of limitations. Appellant contends that the time for payment was indefinite and that the obligation would mature within a reasonable time after he started to practice in 1927, or upon demand for payment by plaintiff, or upon payment made by him, or at least at a time indicated by the plaintiff's prior interpretation of the contract. The appellee interprets the agreement to be that the appellant would repay when he was able to do so or could borrow the money, but *in any event upon the death of his mother*. Under that interpretation the statute would not start to run until the obligation to pay definitely and certainly matured upon the mother's death.

When did the obligation to pay mature? There is comparatively little disagreement about what was said when the agreement was made. The divergence is in the interpretation of the language. Kilborn had tried to borrow money from his mother in order to go to dental college, but in this and other efforts of the sort he was unsuccessful. He told his wife, in substance, that he fully recognized that it was his business to provide the living, but that if she would go to work and make a living for both of them and pay his way through school he would see that she was repaid as soon as he was able to do it or when he could borrow the money, and he stressed the point that he could pay upon the death of his mother, whose property he knew would come to him. At the time the contract was made there were reasons to believe that the mother would not live very long, and Kilborn made it clear that he certainly could pay when she died.

Appellant says that the plaintiff made various "demands" for payment during the years immediately after he began to practice and particularly in 1929, when she sent him two notes to sign. Plaintiff concedes that she made various efforts to secure payment prior to the death of the mother, but without success, and the record shows that within a short time after the mother's death she again went from Kansas City to Oxford, insisted upon payment, and not being successful, brought this action. Whether the earlier impor-

tunities of the plaintiff to secure payment constitute "demands" within the strict legal interpretation of the word is of no consequence if the appellee's interpretation of the contract is correct. Appellant's contention is predicated upon the idea that the time of payment was indefinite and that a "demand" would therefore start the running of the statute. The cases cited by appellant have no application if the certain and definite time when the defendant promised to pay was upon the death of the mother.

Appellant further contends that he made two $50 payments by check in November and December, 1927, and that the acceptance of these payments started the statute. The appellee testified these checks were not in payment on the account, but were for repayment of a loan of $100 which she had been compelled to secure to help the defendant, and were so used. In reply to a special question submitted by the defendant, the jury answered that no payments on the account were made by the defendant. But assuming that such payments were made, they also would not start the statute if the promise to pay did not definitely mature until the death of the mother. This is not a case of a payment which revives a claim already barred. If the time for payment was indefinite, payments would have significance in determining when the statute would begin to run, but if no right of action arose until the death of the mother, a payment and its acceptance prior to that time would not affect the rights of the claimant.

A further contention of appellant is that under an interpretation theretofore placed upon the contract by the plaintiff herself the statute began to run long prior to the death of the mother. This contention is based largely upon the fact that the petition filed in Sumner county only alleged that the defendant promised to pay as soon as he was able, and that he first became able to make payment when his mother died. Any divergence, however, in the allegations of the various petitions cannot be given controlling weight as against the allegations and the evidence in the case here presented.

No citations of authority are required in support of the well-established principles that the statute of limitations does not begin to run against the party to a contract until a right of action on the contract accrues (37 C. J. 813, § 161); that the question of whether the accrual of a right of action depends upon a contingency must be determined by the intention of the parties to be gathered from their agreement (37 C. J. 820); that where a contract provides that

performance of an agreement to pay shall take place upon the happening of a certain event the cause of action does not accrue until the happening of the event (37 C. J. 812-818, § 169). The testimony before us has been carefully examined in the light of the rules of law just stated. While there is some disagreement as to the precise language used, we think it is entirely clear, not only from the testimony of the parties themselves but from testimony of other witnesses concerning statements made to them by Kilborn that he was certain he would receive considerable property from his mother upon her death and that whatever else he might or might not be able to do, he would certainly pay his wife when his mother died. He might make payments prior to that time if he found himself able to do so, but no uncertainty was left as to his obligation to pay upon his mother's death. The jury made no special findings on the question, but it did fix the running of interest from December 24, 1936, the date of the mother's death, which is in line, at least, with that interpretation of the contract. We conclude that the statute did not begin to run until the death of the mother.

2. The second contention is that the contract is unenforceable under the provision of the statute of frauds (G. S. 1935, 33-106), that an action cannot be brought upon a contract not in writing "that is not to be performed in the space of one year from the making thereof." To this contention appellee makes two answers: first, that the contract could have been completed by the death of the mother within a year, and second, that complete performance by the plaintiff of her part of the contract takes the contract out of the operation of the statute. We do not find the first point entirely free from doubt, as it depends largely upon the interpretation of the contract. Both parties agree and both cite decisions to that effect, that if a contract is capable of entire performance within a year it is not within the statute even though the parties may contemplate the probability of much longer continuance, and the contract is in fact not performed within a year. The question is, Could the instant contract be performed within a year? Appellee says that the mother might have died within a year, thus concluding the period covered by the contract. Appellant disagrees, because the defendant had at least three more years of his dental course to complete. But if the mother had died within the year and the defendant had received her property, it would not then have been necessary for the plaintiff to work and earn a living during the completion of de-

fendant's course. However, a determination on that point is made unnecessary by the fact that the plaintiff fully performed her part of the contract. The great weight of authority is that the statute of frauds is not applicable where there has been a full and complete performance by one of the contracting parties, and that the party who has fully performed may sue in a court of law and is not required to abandon the contract and sue in equity or upon a *quantum meruit*. (27 C. J. 350.) This is especially true in the case of a contract for services for a period longer than a year, which has been fully performed and nothing remains to be done by the defendant but to make payment according to the contract. (25 R. C. L. 464.) Decisions of this court are in line with this doctrine. A familiar application of the same principle is to be found in the case of oral contracts for transfer of interest in real estate. (*Jay v. Ellis,* 135 Kan. 272, 10 P. 2d 840; *Craig v. Sanders,* 133 Kan. 97, 298 Pac. 792; *McDowal v. Miller,* 1 Kan. App. 666, 42 Pac. 402; *A., T. & S. F. Railroad v. English,* 38 Kan. 110, 16 Pac. 82.) Application of the principle has been clearly extended to contracts not to be performed within a year. (*Longhofer v. Herbel,* 83 Kan. 278, 111 Pac. 483; *Heery v. Reed,* 80 Kan. 380, 384, 102 Pac. 846; *Aiken v. Nogle,* 47 Kan. 96, 27 Pac. 825; and see *Anderson v. Anderson,* 75 Kan. 117, 126, 88 Pac. 743; *Bichel v. Oliver,* 77 Kan. 696, 95 Pac. 396.)

Two Kansas cases have been noted which might possibly be used in support of the other view. The first is *Wonsettler v. Lee,* 40 Kan. 367, 19 Pac. 862. In that case recovery was denied under the contract, but was permitted under the theory of *quantum meruit,* and the court stated that the fact that a void contract was recited in the petition would not make it demurrable if the other facts stated therein constitute a cause of action, and quoted approvingly a statement in *Deisher v. Stein,* 34 Kan. 39, 7 Pac. 608, that—

"All that a plaintiff needs to do in stating his cause of action is to state the facts of his case; and if such facts would entitle him to recover in any form of action, either at law or in equity, he will be entitled to recover under such statement." (p. 41.)

The other case is *Gates v. Syndicate Oil Corp.,* 132 Kan. 272, 295 Pac. 649, which we think is plainly distinguishable from the present case. The plaintiff asked specific performance of a contract to convey an interest in real estate, and the court said that since compensation could be made in money the statutory exception relative

to the application of the statute of frauds did not apply and therefore the contract was unenforceable. In the case at bar there is no other remedy but payment as prayed for in the petition.

3. The third principal contention of the appellant is that there was improper and prejudicial conduct by the plaintiff's attorney in his argument to the jury and that a mistrial should have been declared and a new trial granted. It appears that counsel for the defendant, in the presence of plaintiff's counsel, asked the court to submit no instructions on the subject of the statute of limitations, preferring to leave that issue for determination on the answer to a special question as to whether the defendant had made payments on the account. Accordingly, no instruction on the statute of limitations was submitted, the court simply stating "the defendant further claims in his answer that the purported cause of action in plaintiff's petition is barred by the statute of limitations and is also barred by the statute of frauds." There was no further statement concerning either statute or their significance as applied to the facts in the case. This question was submitted, and answered as follows:

"Q. Do you find that the defendant, Grant R. Kilborn, ever made any payments to the plaintiff, Ada Richard, upon her claim? A. No."

In his argument counsel for the plaintiff commented on the special question, saying in substance that the defendant desired to have it answered in the affirmative and that it would then be contended that the plaintiff could not recover anything. Objection was made to the comment and the court admonished counsel that it was improper. Motion to declare a mistrial was refused. Upon the hearing of motion for a new trial two of the jurors, including the foreman, were examined and gave testimony substantially to the same effect. They testified that when the jury started to consider the case the first thing done was to vote upon the question of whether anything at all was due to the plaintiff. Upon that the first ballot was unanimous in the affirmative. The next question balloted upon was whether they thought anything had been paid on the contract, and upon that the first vote stood either nine to three or ten to two; that after some discussion all voted that no payment had been made. The record is not clear as to just what was said about the statute of limitations or its significance in the case. We agree with the trial court that the comment of counsel was improper, and it is not here condoned. The court had instructed the jury that the de-

fendant was claiming the defense of the statute of limitations, and counsel was entitled to make any proper argument with reference to the statute and its application to the facts of the case, but the comment which he made went beyond the proprieties, especially in view of the fact that he apparently offered no objection when the court agreed, upon request of the defendant, to give no special instruction concerning the statute. The trial court, however, stated that it did not regard the improper comment sufficiently prejudicial to require a new trial. In that we also agree. Before a judgment will be reversed for misconduct of counsel of the prevailing party occurring at the trial it must appear that such misconduct prejudiced the rights of the defeated party. (*Murphy v. Edgar Zinc Co.*, 128 Kan. 524, 278 Pac. 764.) This is in harmony with the general rule, many times stated by this court, that trial errors will be disregarded unless it affirmatively appears that they have prejudicially affected the substantial rights of the complaining party and where it appears upon the whole record that substantial justice has been done, and in harmony with the provisions of the statute to that effect (G. S. 1935, 60-3317). Our conclusion that the improper remarks of counsel in the instant case did not prejudicially affect the substantial rights of the defendant is based largely upon the view that it would have made no difference in the ultimate result even if the jury had answered that the two $50 payments were made as claimed by the defendant. The matter of credit on account is not important, since the jury only allowed the plaintiff something over half the amount asked for. Moreover, it is apparent that the real significance attached by the appellant to the question of payments had to do with the statute of limitations. For reasons heretofore stated the payments, if made, would not have started the running of the statute.

The judgment is affirmed.