No. 34,490

IDA MARTIN, *Appellee,* v. THE CITY OF KANSAS CITY, *Appellant.*

(96 P. 2d 646)

Opinion filed December 9, 1939.

*Alton H. Skinner, Edwin A. Schalker, William H. Towers, Joseph Lynch* and *James H. Barnes,* all of Kansas City, for the appellant.

*Joseph Cohen,* of Kansas City, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action for damages for injuries sustained by plaintiff when she fell on a defective sidewalk in Kansas

City. Impleaded with the city were one Reddick, a plumber, and the Maryland Casualty Company, a corporation engaged in writing casualty insurance.

The accident occurred about 10 o'clock p. m. on August 11, 1937, as plaintiff, a woman of sixty-five years, in company with two other women, was returning to her home after attending a public meeting nearby.

Plaintiff alleged that a defect existed in the brick sidewalk, to wit, a depression about three feet by five feet in area and a foot deep. She alleged that some time prior to August 11, Reddick, a plumber, obtained a permit to make an excavation in the sidewalk for the purpose of installing some plumbing in an adjacent house; that Reddick made such excavation, but negligently failed to refill it properly, whereby the alleged depression resulted and so remained for four days; that the city knew or should have known of its existence in time to have repaired the sidewalk before the accident and injury to plaintiff.

Plaintiff also alleged that the city had an ordinance which required plumbers to execute a bond to save it harmless from damages caused by negligence in the performance of plumbing work, and that Reddick had given such a bond and that the Maryland Casualty Company was the surety thereon.

The two defendants, Reddick and the Casualty company, were dismissed out of the case before the trial.

The issues between plaintiff and the defendant city were tried before a jury, which returned a general verdict for plaintiff in the sum of $4,000, and judgment was rendered thereon.

The city appeals, urging certain objections to the judgment, the first of which relates to want of evidence that the city had actual or constructive notice of the defective sidewalk. However, one witness for plaintiff testified that the defect had existed for about two weeks. Another testified "it had been there quite a long while." A clerk in the city engineer's office whose duty it was to issue permits to plumbers who desired to make excavations in sidewalks testified that a permit was issued to Reddick on July 23, 1937, to make an excavation at the place where plaintiff was injured nineteen days later. Accompanying such permit it was the practice to issue a card which the plumber should sign and return when the work was completed. Upon its return it became the duty of the city engineer's office to notify the department of streets, whose business it was to

inspect the work and see that the excavation was properly filled up. There was testimony that Reddick never returned the card and consequently the usual routine inspection did not follow. This testimony was sufficient to surmount the demurrer thereto and to take the issue of fact to the jury, both on the length of time the defect existed, and that in the circumstances the city could not avoid its duty to know the condition of the sidewalk following the making of the excavation. That there was such a defect or depression in the sidewalk sufficient to cause plaintiff to fall, although controverted, was well supported by evidence.

The city's next complaint pertains to the size of the verdict, $4,000. It argues that it was excessive and showed passion and prejudice. Plaintiff's evidence tended to show that when she fell and injured herself her two companions assisted her home, a distance of one and a half blocks, and that she suffered much pain; that next day her physician discovered her right hip was dislocated and that he manipulated the trochanter back into its normal position and immobilized her back to facilitate healing; that laceration of ligaments in the sacro-iliac region was indicated; that her knee was discolored and swollen; that plaintiff was in bed seventeen days; that it was six or seven weeks before she "could get around," and that she used crutches until Christmas; that her back still pained her at the time of the trial; and that she had become very nervous and did not sleep well. It will thus be seen that there was testimony sufficient to support a verdict and judgment in favor of plaintiff for a substantial sum of money. But before ruling positively on the claimed excessiveness of the verdict we must take note of another and related error of which the defendant city complains. It centers about the injection of extraneous matter into this lawsuit which permitted the jury to infer that any verdict it might render against the city would ultimately have to be paid by the Maryland Casualty Company, which was surety on the bond of Reddick, the plumber, whose alleged negligent refilling of the excavation in the sidewalk caused the depression into which plaintiff stumbled and injured herself.

It is somewhat difficult for an appellate court to suppress a feeling of distrust as to the correctness of a judgment in which such extraneous matters have been brought into it as would almost inevitably affect the result prejudicially. Here there never was any excuse for impleading Reddick, the plumber, and the Casualty In-

surance Company in this lawsuit; and when at the inception of the trial and before a jury was called the plaintiff dismissed those two defendants out of the lawsuit all reference to the casualty company should have been suppressed. Indeed, the trial court did rule—

". . . The plaintiff should refrain, as should the defendant, bringing before this court and jury in further proceedings any reference to the defendant, The Maryland Casualty Company."

On their *voir dire* counsel for plaintiff inquired if any of the prospective jurors were employed by the Maryland Casualty Company. Counsel for the city objected for the reason that the question and inference would be highly prejudicial to the city. The trial court again ruled:

"You should not go any further into the question of the Maryland Casualty Company; having asked the question generally and no juror having responded that he was employed by them, I think that should end the questions relative to the Maryland Casualty Company. I will overrule the motion to discharge the panel."

Repeatedly in the course of the examination of witnesses, and notwithstanding repeated rulings of the court, as quoted above, that no further reference be made to the matter of insurance, the fact of Reddick being a licensed plumber who was required to give a liability bond was brought into the case to the prejudice of the city.

In *Witt v. Roper*, ante, p. 722, we held that a verdict and judgment tinctured with this manifest infirmity could not receive an unqualified affirmance by this court, and that plaintiff would have to choose between a drastic remittitur and a new trial. No less heroic treatment will justify this court in dealing with the case at bar. A careful study of this record constrains us to hold that the judgment is excessive; that it must be reduced to $2,500 with the alternative that a new trial be granted, at the option of the plaintiff, and the cause should be remanded to the district court with instructions to that effect.

Some other objections to the judgment are urged. These have been considered, but none of them is of sufficient gravity to affect the general result, nor do they require discussion.

The cause is remanded to the district court with instructions to give plaintiff the option of a judgment for $2,500 or a new trial.