No. 37,606

BERTHA ADAMS, AGNES MABEL REED, VIOLA BLANCHE LAFLIN and
DAISY MARY LAFLIN, *Appellees*, v. WILLIAM REED, *Appellant*.

No. 37,607

In the Matter of the Estate of Amy J. Reed, Deceased; BERTHA
ADAMS, AGNES MABEL REED, VIOLA BLANCHE LAFLIN and DAISY
MARY LAFLIN, *Appellees*, v. AGNES JAMES, as administratrix of
the estate of Amy J. Reed, Deceased, *Appellant*.

(215 P. 2d 194)

Opinion filed
February 28, 1950.

*John Berglund, Jr.,* of Clay Center, and *Harry K. Allen,* of Topeka, argued
the cause, and *Rudolph Barta,* of Salina, and *L. M. Ascough,* of Topeka, were
with them on the briefs for the appellants.

*C. Vincent Jones* and *Wayne W. Ryan,* both of Clay Center, argued the
cause and were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: These appeals grow out of the efforts to enforce an agreement not to contest a will.

William James Kynaston, hereafter referred to as Kynaston, of Clay county, was a single man who owned considerable real and personal property. His sister Maude Kynaston died in 1946, and sometime thereafter his sister Amy J. Reed and her husband William Reed moved into his home and remained there until he died on September 23, 1947. Kynaston was survived by five sisters, Bertha Adams, Agnes Mabel Reed, Viola Blanche Laflin, Daisy Mary Laflin and the above named Amy J. Reed. Kynaston left a will leaving all of his property to his sister Amy J. Reed and her husband William Reed, whom he appointed as executors. Shortly after the death of Kynaston the four first named sisters had conversations with Amy J. Reed and William Reed which it was contended constituted a contract not to contest the will, and which will be dealt with at more length later herein. The will was admitted to probate, the executors therein named were appointed as such by the probate court, and the estate was ultimately finally settled. Amy J. Reed died on January 30, 1948, and during the course of administration of the Kynaston estate. The order of final settlement, made September 3, 1948, assigned Kynaston's real estate to the estate of Amy J. Reed and to William Reed, share and share alike. After Amy J. Reed's death, upon proceedings had in the probate court, Agnes James was appointed as administratrix of her estate.

The present controversy grows out of the following: Very shortly after the Kynaston estate was finally settled his four surviving sisters filed a petition in the district court against the defendant William Reed to establish their claim against him. In their petition the plaintiffs set forth at length the family relationship and the affections of one for another, the death of the members of the family as above detailed and that Kynaston, at the time of his death, owned personal property and four farms which are described; that shortly after his death they learned that he had left a will wherein Amy J. Reed and William Reed were the sole beneficiaries, and that the plaintiffs discussed with Amy J. Reed and William Reed the unfairness of the division of the lands, most of which came through the Kynaston family and except for the will that

William Reed would not have been entitled to any portion and that Amy J. Reed would have inherited only a one-fifth thereof; that the question of the competency of Kynaston to make a will and the fact he was influenced to make the will he did were discussed, and the plaintiffs were advised that the only way the will could be changed would be by contesting it, or by not contesting it and having an agreement with Amy J. Reed and William Reed, and it was agreed by all parties that if the plaintiffs would not contest the will of Kynaston and would allow it to be probated, and plaintiffs would continue to be friendly with Amy J. Reed and treat her as they had in the past, Amy J. Reed and William Reed, her husband, would sell the west farms, which need not be further identified here, and divide the money between the plaintiffs equally; that plaintiffs continued to be friendly with Amy J. Reed and looked after her during her last illness; that they did not contest the will of Kynaston; that they requested William Reed, the sole surviving beneficiary under the will of Kynaston and the only heir of Amy J. Reed to carry out the agreement and he failed and refused to do so, notwithstanding plaintiffs had performed all their part of the agreement. They prayed for full and complete performance of the agreement and that if a sale of the "west farms" could not be made "at this time" that their interests be decreed, and for such other relief as they might be entitled.

About the same time the above petition was filed in the district court, a verified petition setting forth plaintiffs' claims against Amy J. Reed was filed in the probate court in the estate of Amy J. Reed, deceased. It is not set forth in the abstracts but we are told it is in substance the same as the petition in the district court. It was certified to the district court for hearing. At some date not disclosed the two actions were consolidated.

We note that the defendant Reed filed his motion to strike parts of the petition and the motion was denied, and that upon his appeal he assigns the ruling as error, but as it is not discussed in his brief we shall consider the claimed error as abandoned and not notice the motion. Reed's answer admitted names and addresses of the plaintiffs, the death of Kynaston and of Amy J. Reed, and that a representative had been appointed for her estate, and denied generally. If any defense was filed to the petition filed in the probate court, it is not included in the abstracts.

At the trial, the defendants' demurrer to plaintiffs' evidence was overruled, defendants offered their evidence, and the court thereafter found all issues in favor of the plaintffs; that the contract was that if plaintiffs would refrain from contesting the will of Kynaston and would continue to regard Amy J. Reed as a sister that as soon as the Kynaston estate could be closed the lands known as the "west farms" would be sold and the money equally divided between the plaintiffs; that plaintiffs had fully performed their part and were entitled to have the contract specifically performed by the defendants. Provisions for enforcement need no notice here.

The defendants' motion for a new trial was denied and they perfected their appeals to this court, where they assign as error the overruling of their demurrer to plaintiffs' evidence, the rendering of judgment for the plaintiffs and the overruling of their motion for a new trial.

It is here noted that two different briefs were filed by the appellants prior to the oral argument of these appeals and since then appellants have filed "additional suggestions" which appellees have answered.

In their first brief appellants contend the action was premature; that the contract was within the statute of frauds, and that the evidence was insufficient to establish the contract as a matter of law.

Appellants present under one head their contentions with respect to the action being premature and that the contract was unenforceable under the statute of frauds. In their brief appellees state that neither question was presented in the court below and is not properly before this court, a statement not denied in briefs subsequently filed by the appellants, and perhaps that should end the matter. The claim of prematurity is based upon an involved argument that the sale of the lands was not to be had until the Kynaston estate was settled, and that the Kynaston estate was settled sooner than it should have been under the probate code. William Reed as executor made the final settlement and will not be heard to deny the fact. Even though the filing were premature the trial was not. Nor shall we dwell at length upon the statute of frauds. The petition alleged and the proof showed complete performance by the plaintiffs, in other words, as to them the contract was executed. Under our decisions the statute was not to be applied. See *Richard v..Kilborn,* 150 Kan. 579, Syl. ¶ 2, 95 P. 2d

545; *Paton v. Paton*, 152 Kan. 351, Syl. ¶ 4, 103 P. 2d 826, and cases cited in those opinions.

Appellants' contention that the trial court erred in overruling their demurrer to the appellees' evidence is based upon a résumé of evidence favorable to them and ignores all evidence favorable to the appellees. Under their contention it is argued there was no consideration for the contract; that there was no acceptance by Mr. and Mrs. Reed; that the evidence was not clear and satisfactory, and our attention is directed to testimony which appellants argue support their views. The premise for such a contention is at variance with our established practice. No point is served by detailing evidence that in order to avoid a contest of the Kynaston will, Mr. and Mrs. Reed agreed with the appellees that if appellees would refrain from such litigation they would sell the west farms and divide the proceeds among the appellees. Such a showing was sufficient to make a prima facie case. The trial court did not err in ruling upon the demurrer.

In their second brief appellants contend that the district court was without jurisdiction over the subject matter in the action commenced there, and that the proceeding commenced in the probate court was in the wrong estate. Appellants first direct attention to the proposition that the question of jurisdiction may be raised for the first time in this court (*Behee v. Beem*, 156 Kan. 115, Syl. ¶ 3, 131 P. 2d 675) and contend that the district court was without jurisdiction of the subject matter in the action against William Reed, a question concededly not raised in the trial court. Their argument runs that appellees entered into a contract with appellants that if appellees would not contest the Kynaston will and would continue to be friendly with Amy J. Reed, the Reeds would sell the west farms and divide the moneys among the appellees; that the effect of that contract was a family settlement whereby the Kynaston estate was to be divided contrary to Kynaston's will; that the subject matter of the contract was the estate of Kynaston, and that such a contract had to be enforced by proceeding in the probate court in the Kynaston estate and could not be enforced by an action in the district court. In support of this argument they cite *Erwin v. Erwin*, 153 Kan. 703, 113 P. 2d 349, and *In re Estate of Hinshaw*, 164 Kan. 550, 190 P. 2d 386. An exhaustive review of those cases will not be made here. In the Erwin case, after appointment of an administrator, the heirs made a written contract for division of the decedent's

estate. Shortly thereafter the widow brought an action in the district court to set aside that contract on the ground of fraud. While that action was pending, a second contract was made providing for an adjustment of all claims and for dismissal of the district court action, and it was stated the contract was made *to effect a quick and proper setlement of the estate* in accordance with its terms. When the administratrix filed her petition for final settlement she attached a copy of the contract. Some heirs sought to have it stricken on the ground the probate court was without jurisdiction to make a settlement in accordance with its terms and could only make distribution in accordance with the laws of descent. Reference is made to that opinion for reasons assigned. This court held the probate court had jurisdiction to settle the estate in accordance with the contract. In the Hinshaw case is an involved state of facts. Petitions were filed in the probate court which if allowed would cause decedent's property to pass other than as directed in the testator's will. Over petitioner's protest, the petitions were certified to the district court which, generally, refused to remand them to the probate court. Judgment was rendered on the merits against one petitioner. On appeal to this court it was held that the petitions were not subject to certification to the district court, that the probate court had exclusive original jurisdiction to hear the petitions and that under the circumstances the district court was without jurisdiction to hear and determine the matter on the merits.

In our opinion, under the facts presented the two decisions relied upon by appellants are not applicable. The contract alleged in the petition and found by the trial court was not one for a settlement of property rights in the Kynaston estate. The agreement made was not one to dispose of property in a different manner from that which would otherwise take place nor one which would result in the assignment of any property to the appellees, who were not beneficiaries under Kynaston's will. It was not a family settlement as that term is used in the law. See definitions in Words & Phrases as well as the definition of "family arrangement" in Bouvier's Law Dictionary. And see also *Montgomery v. Grenier,* 117 Minn. 416, 136 N. W. 9, where it was held that an agreement on the part of a brother of a deceased person with another brother and sister to refrain from contesting the will of the decedent in consideration of the latter, who were beneficiaries under the will. to pay him a certain sum of money,

was not a family settlement within the meaning of the law upon that subject. The contract now under consideration not only did not provide for a disposition of the property in a manner contrary to the terms of the will but in effect provided that the will was to be carried out. The force of the contract was that if the appellees would not contest the will, the beneficiaries under the will would pay them moneys to be derived from the sale of certain real estate. It is not, and cannot be, contended that such a contract, if proved, was illegal or invalid, and had appellees asserted the contract in the probate court in the Kynaston estate, as appellants contend they should have done, it would have been contrary to the very agreement made. Appellants' contention that the district court was without jurisdiction in the action commenced there is not sustained.

Insofar as the proceeding commenced in the probate court is concerned, appellants contend that although appellees were in the proper court, they proceeded in the wrong estate, this on the theory that the agreement was a family settlement for division of the Kynaston estate and should have been asserted in that estate. What has been said concerning the action commenced in the district court disposes of the contention there was a settlement for division of the Kynaston estate. Amy J. Reed, a party to the agreement not to contest the Kynaston will, died before she had carried out her part of the agreement. Appellees properly asserted this claim against her by the petition filed in the probate court against her estate. We hold that appellees proceeded in the proper estate.

The matters set forth in the belated "additional suggestions" are in part a reiteration of matters contained in the briefs and heretofore discussed. The new matter is an attempt to show a trust may be implied from the course of dealings between the parties, and if so, rights thereunder must have been asserted in the probate court. Such a question was never presented in the trial court, is raised here belatedly and will be disposed of shortly. We have read the authorities cited and conclude that no such trust relation existed as would affect the soundness of the trial court's judgment.

From what has been said it follows that the judgment of the trial court must be and it is affirmed.