IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 115,126

ED DEWITTE INSURANCE AGENCY, INC., *et al.*,
*Appellants*,

v.

FINANCIAL ASSOCIATES MIDWEST, INC., *et al.*,
*Appellees.*

SYLLABUS BY THE COURT

1.

The Legislature's failure to change a law after it has received specific judicial construction for a long period of time can be construed as legislative approval of the court's interpretation.

2.

Under the statute of frauds, courts narrowly construe oral contracts that purportedly extend beyond one year. Only when the terms of the alleged agreement demonstrate that it is impossible in both fact and law for the parties to complete the agreement within one year will the agreement come within the statute of frauds.

3.

When one party to an oral agreement has completed his or her performance, the one-year provision of the statute of frauds does not prevent enforcement of the promises of other parties. The full-performance exception requires only complete performance by one party.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 238, 388 P.3d 156 (2016). Appeal from the Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed September 21, 2018. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case remanded.

*Michael L. Blumenthal*, of Seyferth Blumenthal & Harris LLC, of Kansas City, Missouri, argued the cause, and *Kevin J. Karpin* and *Walter M. Brown*, of the same firm, were with him on the briefs for appellants.

*Sarah E. Warner*, of Thompson Warner, P.A., of Lawrence, argued the cause, and *William S. Robbins, Jr.*, *W. Terrence Kilroy*, and *Christopher L. Johnson*, of Polsinelli PC, of Kansas City, Missouri, were with her on the briefs for appellees.

The opinion of the court was delivered by

STEGALL, J.:  This case is about the statute of frauds, codified in Kansas at K.S.A. 33-101 et seq. As its name suggests, the statute was designed to prevent fraud by requiring parties to reduce certain oral agreements to writing. The writing requirement applies to any agreement that cannot be performed within one year. But common law has long excepted from this requirement any oral agreement in which one of the parties has fully performed his or her part of the agreement. In statute-of-frauds' terminology, the exception "removes" the agreement from the statute and allows the performing party to enforce the agreement in a court of law.

In this case, three individuals ask us to enforce their oral agreement with their former employer. They contend they have fully performed their end of the bargain by working for him for over 20 years and are owed the compensation they bargained for. The Court of Appeals concluded that to satisfy the full-performance exception, these individuals had to fully perform their part of the agreement *and* the only thing left to be done was for the former employer to pay. Because the former employer's duty to pay depended on the actions of third parties, the panel ruled in favor of the former employer.

2

Now before this court, the question is whether the Court of Appeals erroneously construed the full-performance exception.

This appeal presents us with an opportunity to explore the rich history of the statute of frauds and the full-performance exception. We do so, and, in the end, we adopt the rule set forth in Restatement (Second) of Contracts § 130 (1981), holding that full performance by one party alone is sufficient to remove the agreement from the statute. As a result, we reverse the Court of Appeals and district court and remand this case to the district court for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

In 1976, Charles Stumpf founded Financial Associates Midwest, Inc. (Financial Associates), a health insurance brokerage that used a network of independent agents to sell health insurance policies. Financial Associates (later known as Canopy) hired Barbara Meador as an area manager in 1982. Three years later, Financial Associates hired Leonard Filley as an in-house salesman, and he became an area manager a few months later. Edward DeWitte was hired as an area manager in 1988. For ease of reference, we refer to Meador, Filley, and DeWitte collectively as the "area managers."

Rather than selling or producing insurance policies themselves, the area managers mainly recruited, oversaw, and trained other agents. Stumpf assigned new agents to the area managers, who supervised the new agents, answered questions, and provided administrative support.

Each area manager signed an identical area-manager contract. The agreement provided that the area managers were paid by commissions and renewal commissions on premiums paid on policies secured by them and their sub-agents. The renewal commissions were "vested," meaning that following the termination of their contracts, the

3

area managers (or their surviving spouses) continued to receive renewal commissions until the monthly amount due dropped below $100. The area managers were hired for an indefinite period. In all three instances, the area managers worked for Financial Associates for over 20 years.

In the early 1990s, Financial Associates began doing business with Blue Cross and Blue Shield of Kansas City (Blue Cross). In 1994, Financial Associates became one of Blue Cross' "Blue Chip" agencies. This meant Blue Cross paid Financial Associates an administrative service fee—called an "override"—to help subsidize a portion of Financial Associates' administrative expenses. The override represented 2% of all Blue Cross premiums on policies that had been sold by Financial Associates. It was governed by an Administrative Services Agreement between Blue Cross and Financial Associates. The override encompassed yearly policies and renewals that could not have been renewed within one year.

In the mid-1990s, Stumpf orally agreed with the area managers that in exchange for their work, Stumpf would pay them half the override—1% of the Blue Cross policy premiums sold by Financial Associates. Stumpf and the area managers also orally agreed that the 1% override payment would occur both during their employment and after their employment ended, "until the policies they had signed were no longer renewed." For nearly 20 years, the area managers regularly received the 1% override payment.

In December 2011, Stumpf sold Financial Associates to Blue Cross. The next year, Blue Cross offered the area managers new employment terms. These terms required the area managers to relinquish their rights to the 1% override payment. Meador and DeWitte refused and were terminated. Filley also declined the new terms, though he had retired shortly before Blue Cross offered the new terms. Blue Cross stopped paying Financial Associates the 2% override when it purchased Financial Associates. And Blue Cross later stopped paying the 1% override to the area managers.

The area managers demanded that Financial Associates continue to pay the 1% override, but it refused. When their employment ended, the area managers were receiving between $12,000 and $20,000 each month from the 1% override payments.

The area managers then filed a petition against Blue Cross and Financial Associates, advancing many claims, including breach of contract and a breach of covenant of good faith and fair dealing. The parties conducted several depositions and filed competing motions for summary judgment.

The district court entered summary judgment in favor of Blue Cross and Financial Associates. First, it found the area managers could not prevail under the breach of contract claim because the area-manager contracts did not govern the payment of the 1% override payment. The district court also denied the area managers' good faith and fair dealing claims because it found they were at-will employees.

Next, the district court considered whether the oral agreement to pay the 1% override was unenforceable under the statute of frauds. The district court first found the oral agreement could not have been performed within one year because the purchase or renewal of policies occurs annually. This meant, according to the court, that the 1% override represents over one year's worth of work. The court then held the full-performance exception to the statute of frauds did not apply because the calculation of the 1% override was contingent on the renewal of policies not guaranteed to occur. The district court also denied the area managers' remaining claims.

Among the several claims the area managers advanced on appeal, they argued that the statute of frauds does not render the oral agreement between them and Stumpf unenforceable. In a published opinion, the Court of Appeals affirmed. *Ed DeWitte Ins. Agency v. Financial Assocs. Midwest,* 53 Kan. App. 2d 238, 388 P.3d 156 (2016). The

5

panel ultimately adopted New York law, holding that "when a party to an oral agreement has fully performed but the other party's obligation to pay remains contingent on the actions of independent third parties, the full-performance exception does not apply to take the oral agreement out of the statute of frauds." 53 Kan. App. 2d at 253-54. According to the Court of Appeals, this meant the area managers could not prevail because Blue Cross and Financial Associates' obligation to pay was contingent on the policyholders' decision to renew. The Court of Appeals denied the remaining claims and affirmed. 53 Kan. App. 2d at 257.

The area managers petitioned for review solely on the statute of frauds question, and we granted review. Jurisdiction is proper. See K.S.A. 60-2101(b) ("[A]ny decision of the court of appeals shall be subject to review by the supreme court[.]").

ANALYSIS

The area managers argue the Court of Appeals erroneously construed the full-performance exception by holding that it requires something more than full performance by one party. On the other hand, Blue Cross and Financial Associates argue that we should discard the full-performance exception entirely because it is not mentioned in K.S.A. 33-106. If we retain the exception, they contend the panel properly adopted New York caselaw and held the exception does not apply when the "obligation to pay remains contingent on the actions of independent third parties." 53 Kan. App. 2d at 254.

At the outset, we consider Blue Cross and Financial Associates' statutory plain language argument but are persuaded the Legislature has acquiesced to the common law full-performance exception. It has not once tried to abrogate the full-performance exception despite our repeated recitation of the exception for nearly the entirety of our statehood. Next, we explore the historical underpinnings of the statute of frauds and the full-performance exception. Doing so persuades us that the rule articulated in

6

Restatement (Second) of Contracts § 130 is correct. Accordingly, we hold that full performance by one party is sufficient, standing alone, to remove the agreement from the statute.

*Standards of Review*

The district court granted Blue Cross and Financial Associates' motion for summary judgment and denied the area managers' competing motion for summary judgment.

> "'When the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. The district court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules as the district court.'" *Apodaca v. Willmore*, 306 Kan. 103, 105-06, 392 P.3d 529 (2017).

Resolving this case requires us to interpret the statute of frauds. The interpretation and construction of a statute is a question of law subject to plenary review. *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 622, 413 P.3d 432 (2018); see *Ayalla v. Southridge Presbyterian Church*, 37 Kan. App. 2d 312, 317, 152 P.3d 670 (2007).

7

*The Language of K.S.A. 33-106*

As with all questions of statutory interpretation, we start with the language of the statute. Kansas' statute of frauds is in Article 1 of Chapter 33 of our statutes. Pertinent to this appeal, K.S.A. 33-106 provides:

> "No action shall be brought whereby to charge a party upon any special promise to answer for the debt, default or miscarriage of another person; or to charge any executor or administrator upon any special promise to answer damages out of his own estate; or to charge any person upon any agreement made upon consideration of marriage; or upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; *or upon any agreement that is not to be performed within the space of one year from the making thereof*, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing." (Emphasis added.)

Substantively, the same provision has appeared in our statutes since shortly after statehood. See R.S. 1923, 33-106; G.S. 1905, ch. 43, sec. 3256; G.S. 1868, ch. 43, sec. 6; see also *Backus v. Clark*, 1 Kan. 303, 308 (1863) (referencing the statute of frauds during territorial days).

Blue Cross and Financial Associates argue our full-performance exception should be discarded because the plain language of K.S.A. 33-106 does not authorize it. The Court of Appeals alluded to the statute's language when it expressed its fear of "add[ing] exceptions to the statute of frauds." *Ed DeWitte Ins. Agency,* 53 Kan. App. 2d at 253.

As with all questions of statutory interpretation, we start with the text of the statute. *Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1059, 390 P.3d 504 (2017). It is true that K.S.A. 33-106 includes no exception for when one party fully

8

performs his or her part of the bargain. In fact, the statute is void of any of the long-established exceptions to the statute of frauds.

As will be discussed in greater detail below, the full-performance exception to the statute of frauds was developed in British common law, recognized by this court a few years after statehood, and has been repeatedly recognized by this court. See, e.g., *A. T. & S. F. Rld. Co. v. English*, 38 Kan. 110, 117, 16 P. 82 (1887); see also *Sattig v. Small*, 1 Kan. 170, 175 (1862) (explaining that Kansas had incorporated British common law "so far as it was consistent with the constitution and laws of the United States and the statutes of Kansas"); 1855 Laws of the Kansas Territory, ch. 96, § 1 (incorporating the common law); K.S.A. 77-109 (same).

First, we presume the Legislature acts with "'full knowledge and information about the statutory subject matter, prior and existing law, and the judicial decisions interpreting the prior and existing law and legislation.'" *State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015). Because of this preexisting knowledge, courts also presume legislatures do not intend to alter or abrogate the common law unless a statute makes clear such an intention. See Annot., 97 A.L.R. 1297.

Next, the Legislature's "continued, long-term acquiescence is a strong indication" that our caselaw reflects legislative intent. *State v. Quested*, 302 Kan. 262, 279, 352 P.3d 553 (2015); see *State v. Spencer Gifts*, 304 Kan. 755, Syl. ¶ 5, 374 P.3d 680 (2016) ("Legislative acquiescence can be, but is not always, indicative of legislative intent."); *McIver v. State Highway Commission*, 198 Kan. 678, Syl. ¶ 3, 426 P.2d 118 (1967) ("The failure of the legislature to change a law after it has received specific judicial construction for a long period of time amounts to legislative approval of the court's interpretation."); but see *U.S.D. No. 501 v. Baker*, 269 Kan. 239, 246, 6 P.3d 848 (2000) (warning that sometimes "[l]egislative inaction is not necessarily indicative of legislative intent").

9

Given the extensive history of the full-performance exception and the repeated invocation of the exception for nearly 150 years, we think it safe to conclude the Legislature has acquiesced to the full-performance exception.

*A Brief Overview of the Statute of Frauds*

Each state's statute of frauds owes its existence to the English statute of frauds, which was not part of the common law. The English Parliament adopted it in 1677. Smith on the Law of Frauds § 310, pp. 323-24 (1907); 4 Corbin on Contracts § 12.4, pp. 18-19 (rev. ed. 1997). Although several rationales for the statute have been advanced, its overarching purpose is to "prevent fraud by requiring certain enumerated contracts to be evidenced in writing." 9 Williston on Contracts § 21:1, p. 228 (4th ed. 2011); see 37 C.J.S., Frauds, Statute of § 1 (listing other purposes such as to promote or foster certainty; preserve the integrity of contracts; eliminate concerns about the reliability of oral evidence; and prevent harassment by claims of oral promises). The British Parliament repealed the statute of frauds in 1954, but nearly every state in the union maintains some version of it. 4 Corbin on Contracts § 12.1, p. 5 & n.18 (noting all states except New Mexico and Louisiana have statutes like the English statute); see *English*, 38 Kan. at 116-18 (discussing the differences between the English statute and the Kansas statute of frauds).

Section IV of the English statute listed several types of contracts that fell within its purview. One was "any Agreement that is not to be performed within the space of one yeare from the making thereof[.]" Smith on the Law of Frauds § 310, p. 324. Commentators appear to universally agree that "of all the provisions of the statute, it is the most difficult to rationalize." 2 Farnsworth on Contracts § 6.4, p. 130 (3d ed. 2004); see 9 Williston on Contracts § 24:1, p. 578-79 (citing *C.R. Klewin, Inc. v. Flagship Properties, Inc.*, 220 Conn. 569, 600 A.2d 772 [1991]).

"Where actions on contracts are long delayed, injustice is likely to be done because of bad memory and because witnesses have died or moved away, so that mistakes will be made and perjury is more likely to be successful. And in the case of a contract whose performance is to cover a long period of time, actions are likely to be long delayed. These have been suggested as the reasons that underlay the enactment of this fifth provision. Some justification may also be attributed to the special significance of contracts of long duration. Nevertheless, the statute is poorly designed to achieve any of these ends, and no very satisfactory rationale for it has ever been discovered." 4 Corbin on Contracts § 19.1, pp. 571-72.

See Restatement (Second) of Contracts § 130 (1981), comment a ("The design was said to be not to trust to the memory of witnesses for a longer time than one year, but the statutory language was not appropriate to carry out that purpose."); 2 Farnsworth on Contracts § 6.4, p. 130 ("It is ill-contrived if it is intended to serve an evidentiary purpose and equally ill-contrived if it is intended to single out significant contracts of long duration.").

Given this widespread skepticism, we have narrowly construed oral agreements that purportedly extend beyond one year. See *Augusta Bank & Trust v. Broomfield*, 231 Kan. 52, 59, 643 P.2d 100 (1982) (citing prior caselaw from this state and stating this court has, "in essence," adopted the policy in comment a of Restatement § 130); *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 408, 166 P.3d 440 (2007) ("The clear trend over the years has been toward a narrowing interpretation of the statute of frauds."); *Professional Bull Riders, Inc. v. AutoZone, Inc.*, 113 P.3d 757, 759-60 (Colo. 2005) ("Due to this provision's questionable effectiveness in carrying out the general purposes of the statute, under virtually any rationale, courts have tended to construe it narrowly, to void the fewest number of oral contracts."); see also 2 Farnsworth on Contracts § 6.4, p. 131; 37 C.J.S. Frauds, Statute of § 33.

For instance, Kansas courts—like others—have employed a literal interpretation of the phrase "not to be performed within the space of one year" so that it encompasses only agreements that cannot possibly be performed within one year. See *Nutt v. Knutson*, 245 Kan. 162, 164, 795 P.2d 30 (1989) (stating the contract "'cannot possibly be completed within a year'"); *In re Estate of Hargreaves*, 201 Kan. 57, 62, 439 P.2d 378 (1968) ("[I]t has been held that an oral contract, which might have been fully performed within one year, does not fall within the statutory prohibition."); *Cassity v. Cassity*, 147 Kan. 411, 416, 76 P.2d 862 (1938) ("Unless an oral agreement discloses it cannot be performed within the space of one year, we cannot say the agreement violates the provisions of the statute."); *In re Estate of Brecheisen*, No. 111,745, 2015 WL 3632335, at *3 (Kan. App. 2015) (unpublished opinion) (stating the one-year provision "has consistently been understood to apply only when it is *impossible* to perform the contract within 1 year"); see also *Kroshnyi v. U.S. Pack Courier Services., Inc.*, 771 F.3d 93, 110 (2d Cir. 2014) (explaining the agreement must have "absolutely no possibility in fact and law of full performance within one year"); *Spectrum Benefit Options, Inc. v. Medical Mutual of Ohio*, 174 Ohio App. 3d 29, 42-43, 880 N.E.2d 926 (2007) ("'For over a century, the "not to be performed within one year" provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction.'"); 9 Williston on Contracts § 24:3, pp. 615-24 ("A promise which is not likely to be performed within a year, and which in fact is not performed within a year, is not within the statute if at the time the contract is made there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year.").

And by narrowly construing this provision, courts serve the underlying purpose of the statute of frauds—"to prevent fraud and injustice, not to foster or encourage it." *Bank of Alton v. Tanaka*, 247 Kan. 443, 452, 799 P.2d 1029 (1990); see *In re Cox*, 408 B.R. 407, 413 (Bankr. D. Kan. 2009) ("Statutes of frauds are to prevent frauds, not to enable a person to undo a promise. Thus, Kansas law recognizes exceptions to the requirement of a written contract."); *Aiken v. Nogle*, 47 Kan. 96, 98, 27 P. 825 (1891) ("The statute of

12

frauds cannot, and ought not to be, construed to permit palpable frauds. . . . Common honesty requires and compels such a ruling.").

Here, the district court found the agreement could not be performed within one year. The Court of Appeals agreed, reasoning:

"[T]he renewal aspect of the oral agreement makes it impossible to perform the agreement in 1 year and thus triggers the requirement that the contract be in writing. Insurance policies are for 1-year terms, so they cannot be renewed in less than 1 year, and the renewal premiums—collected by Financial Associates agents, sent to Blue Cross, and used to calculate the override fee—couldn't have been collected in less than 1 year. It wouldn't be possible for Financial Associates to pay 1% of all renewal premiums on all the outstanding policies until more than a year from the date of the oral agreement because the policies are annual." *Ed DeWitte Ins. Agency*, 53 Kan. App. 2d at 249.

The area managers did not petition for review of this holding. Blue Cross and Financial Associates note the area managers' lack of challenge, and the area managers do not controvert this claim in their responsive brief. "If review is not limited, the issues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals." Supreme Court Rule 8.03(h)(1) (2018 Kan. S. Ct. R. 56); see *In re Care & Treatment of Ellison*, 305 Kan. 519, 525, 385 P.3d 15 (2016). Although we assume for this appeal that this agreement cannot be performed within one year, we note the narrow and literal construction of these types of agreements.

*The Full-Performance Exception*

This brings us to the full-performance exception, which the area managers rely on to enforce their agreement. Kansas, along with a majority of jurisdictions, has long recognized that "full performance of an alleged oral contract by the appellant . . . would

13

relieve the cause of action from the inhibitions of the statute of frauds." See, e.g., *King v. Robbins*, 193 Kan. 70, 74, 392 P.2d 154 (1964); see also Calamari & Perillo, The Law of Contracts § 19.23, p. 748 (4th ed. 1998). Full performance by one party is said to provide reliable evidence of an agreement, which cuts to the heart of the statute of frauds. See 2 Farnsworth on Contracts § 6.9, p. 180; *Meyer v. Logue*, 100 Ill. App. 3d 1039, 1044, 427 N.E.2d 1253 (1981) ("[Full] performance tends to minimize the dangers that the Statute of Frauds were designed to prevent.").

The exception is rooted in common law. See, e.g., *Donellan v. Read*, 3 Barnewall & Adolphus 899, 906 (King's Bench 1832) ("As to the contract not being . . . performed within a year, we think that as the contract was entirely executed on one side within a year, and as it was the intention of the parties, founded on a reasonable expectation, that it should be so, the statute of frauds does not extend to such a case."). And it permits the performing party to sue upon the contract in a court of law; the performing party is not limited to a cause in equity. *State Bank v. Gonder*, 132 Kan. 636, 638-39, 296 P. 338 (1931). The U.C.C. contains a similar exception for contracts for the sale of goods. See K.S.A. 84-2-201(3)(c) ("A contract which does not satisfy the requirements of subsection [1] but which is valid in other respects is enforceable . . . with respect to goods for which payment has been made and accepted or which have been received and accepted.").

At this point, it is essential to distinguish between the different types of performance under the statute of frauds because some of our older cases confuse the terminology. See, e.g., *Rice v. Randolph*, 111 Kan. 73, 77, 206 P. 314 (1922). In Kansas, the "part-performance exception" is applied to situations in which the performing party has only *partially* performed his or her part of the agreement. This exception is available only when the agreement relates to land. See, e.g., *Manning v. Woods,* 187 Kan. 418, 422, 357 P.2d 757 (1960) (employee who was terminated before the end of his oral one-year employment contract could not rely on the part-performance exception because that exception is only available in contracts "relating to land"). Likewise, the full-performance

14

exception does not refer to situations in which *both parties* have fully performed the contract. This too removes the agreement from the statute of frauds. See *Eikmeier v. Eikmeier*, 174 Kan. 71, 78, 254 P.2d 236 (1953) ("If the contract was in fact made, and the court found that it was, both parents performed the substance of the agreement by executing their wills. [The wife] further performed by dying, leaving her will in full force and effect; and [the husband] further performed by accepting the benefits under her will. Ordinarily, of course, full performance of a contract takes it out of the inhibitions of the statute."). This case is about the full performance of only one party.

Perhaps the earliest case in this state referencing the full-performance exception is *A. T. & S. F. Rld. Co. v. English*, 38 Kan. 110 (1887). In that case, a landowner orally agreed to grant an easement to a railroad so it could build a depot on his land. In exchange, the railroad agreed to provide an annual train pass to the landowner permitting him to travel on the railway without charge. The landowner then conveyed the easement to the railroad, which made no mention of the annual train pass. When the railroad stopped providing the pass, the landowner sued and prevailed at trial.

On appeal, the railroad argued the agreement came within the statute because it could not be performed within a year. This court disagreed: "This contract was also performed within one year upon the part of plaintiff, and the defendant cannot claim protection under the statute of frauds; its protection extends to executory contracts, *and does not apply to contracts that have been executed by one party*." (Emphasis added.) 38 Kan. at 117.

A prominent full-performance case in the early 20th century was *Meador v. Manlove*, 97 Kan. 706, 156 P. 731 (1916). There a husband and wife orally agreed to execute wills conveying all their property to each other upon their deaths. They also agreed that after one died, the surviving spouse would execute a new will passing the property received from the spouse who died first back to his or her heirs. The wife passed

away first, and the husband took possession of her property. The husband then ignored the oral agreement and made a new will conveying all of his property—including what he received from his late wife—to his heirs. Following his death, the wife's heirs sued the husband's estate, claiming they were entitled to her property.

On appeal, the husband's estate argued the statute of frauds rendered the agreement unenforceable. This court held the full-performance exception brought the agreement outside the statute:

> "In the case before us, there was full and complete performance of the oral contract by Emma Manlove, so far as it was to be performed unless she outlived David. Relying upon his promise to bequeath all her property to her heirs if she died before he did, she waived her absolute right to will them half her property or otherwise to bestow it upon them during her lifetime. Nothing remained unperformed on her part at her death.

> . . . .

> "Since the evidence of the parole agreement is clear and convincing, and since Emma's part of it was performed, under the precedents which we have cited and which could be indefinitely amplified from the decisions of other states, it must be held that neither the statute of frauds nor the statute of trusts and powers will defeat this action. Nor can it be said that there is any weakness in the evidence as to the terms of the agreement, even if tested under all the rules urged by appellants." 97 Kan. at 712-13.

The Restatement (Second) of Contracts § 130 (1981) states the full-performance exception as follows:

> "(1) Where any promise in a contract cannot be fully performed within a year from the time the contract is made, all promises in the contract are within the Statute of Frauds until one party to the contract completes his performance.

16

"(2) When one party to a contract has completed his performance, the one-year provision of the Statute does not prevent enforcement of the promises of other parties."

See Restatement (First) of Contracts § 198 (1932) ("Where any of the promises in a bilateral contract cannot be fully performed within a year from the time of the formation of the contract, all promises in the contract are within [the one-year provision], unless and until one party to such a contract completely performs what he has promised. When there has been such complete performance, none of the promises in the contract is within [the one-year provision].").

We have explicitly adopted the policy in section 130 of the Restatement (Second) of Contracts. *Augusta Bank & Trust*, 231 Kan. at 59. And the significant majority of our cases recite the Restatement's version of the rule. See *In re Hargreaves*, 201 Kan. at 62 ("Full performance of an alleged oral contract relieves a cause of action thereon from the inhibitions of the statute of frauds."); *King*, 193 Kan. at 74 (same); *In re Estate of Shirk*, 186 Kan. 311, 327, 350 P.2d 1 (1960) (same); *Adams v. Reed*, 168 Kan. 575, 578, 215 P.2d 194 (1950) ("The petition alleged and the proof showed complete performance by the plaintiffs, in other words, as to them the contract was executed."); *Paton v. Paton*, 152 Kan. 351, 359, 103 P.2d 826 (1940) ("'Neither the statute of frauds nor the statute of trusts and powers is a bar to the enforcement of an oral agreement to make a will when it has been fully performed by one of the parties.'"); *Smith v. Nyburg*, 136 Kan. 572, 576, 16 P.2d 493 (1932) ("[F]ull performance as alleged by plaintiff would relieve the cause of action from the inhibitions of the statute of frauds."); *Bateman v. Franklin*, 114 Kan. 183, 184, 217 P. 318 (1923) ("The contract, though oral, had been fully performed on plaintiff's side, so the statute of frauds . . . would not bar the action."); *Meador*, 97 Kan. 706, Syl. ¶ 4 ("Neither the statute of frauds nor the statute of trusts and powers is a bar to the enforcement of an oral agreement to make a will when it has been fully performed by one of the parties."); see also *Harold v. Harold*, 218 Kan. 284, Syl. ¶ 2, 543 P.2d 1019 (1975) ("In an action for specific performance of an oral contract to convey land, it is

17

*held* that where the petition alleges a contract which could have been performed within one year, and alleges that one party fully performed his obligation under the contract and the other party did not, the statute of frauds does not bar recovery."); see *Hayes v. Kansas University Athletic Corp.*, No. 91,140, 2004 WL 1542503, at *1 (Kan. App. 2004) (unpublished opinion) ("Full performance by one party for services is a well-recognized exception to the statute of frauds.").

However, on at least two occasions we have stated the rule in a different manner. *Richard v. Kilborn*, 150 Kan. 579, 95 P.2d 545 (1939), involved an oral agreement between a husband and wife that the wife would obtain employment and work to pay for her husband's education to become a dentist. In return, the husband promised to fully repay her. She fully performed, and the husband obtained his education. When the two eventually divorced, the husband still had not repaid her. The wife sued and prevailed at trial.

On appeal, the husband argued the statute of frauds prohibited the enforcement of the oral contract because the contract could not be completed in one year. In upholding the district court's decision, the court described the full-performance exception:

> "The great weight of authority is that the statute of frauds is not applicable where there has been a full and complete performance by one of the contracting parties, and that the party who has fully performed may sue in a court of law and is not required to abandon the contract and sue in equity or upon a *quantum meruit*. (27 C. J. 350.) This is especially true in the case of a contract for services for a period longer than a year, which has been fully performed *and nothing remains to be done by the defendant but to make payment according to the contract*. (25 R. C. L. 464.)" (Emphasis added.) 150 Kan. at 584.

This additional requirement arose from 25 R.C.L. 464, which stands for "Ruling Caselaw"—a legal annotation published in the early 1900s. The secondary source states:

18

"Where the contract has been fully performed by the plaintiff, as in case of a contract for services for a period longer than a year, and nothing remains to be done by the defendant but to pay the amount of the agreed compensation, it has been held that the contract may be enforced against the defendant according to its terms." 25 R.C.L. 464 (1919).

The only case to which it cites is *Diamond v. Jacquith*, 14 Ariz. 119, 123, 125 P. 712 (1912).

Of the four cases citing *Richard*'s holding, only one mentions the additional element that all that must be left is for the nonperforming party to pay. See *Kinser v. Bennett*, 163 Kan. 725, 729, 186 P.2d 284 (1947) (quoting *Richard*, 150 Kan. 579, Syl. ¶ 2). The other three cases recite the broader rule that a party's full performance removes the alleged contract from the statute of frauds. See *Talbott v. Gaty*, 171 Kan. 136, 141, 231 P.2d 202 (1951); *Adams*, 168 Kan. at 578; *Paton*, 152 Kan. at 359. In this case, the Court of Appeals cited only *Kinser* when referencing the full-performance exception. See *Ed DeWitte Ins. Agency,* 53 Kan. App. 2d at 250.

But a closer look at *Kinser* reveals the court's reference to the statute of frauds and the full-performance exception was merely dictum. That case dealt with a caretaker who sought to enforce an alleged oral agreement she had with an elderly brother and sister. The caretaker claimed that in exchange for caring for the siblings, their estate would pay her reasonable compensation for her services. The district court ultimately disallowed the claim, finding a provision in the will covered the caretaker's compensation for much less than she requested. Although the court stated it was unnecessary to determine "whether there was an express contract between the parties[,]" it still stated any contract "was void under the statute of frauds." 163 Kan. at 728. It cited *Richard*'s holding but offered no analysis of the full-performance exception, ultimately affirming the district court's ruling. See 163 Kan. at 730.

19

These cases leave us with the following summary: The most widely stated version of the full-performance exception is that when one party fully performs his or her part of an alleged oral contract, the statute of frauds does not apply. Section 130 of the Restatement (Second) of Contracts mirrors this statement of the law. A minority of cases state the additional element that the only thing left to do must be for the nonperforming party to pay.

*Persuasive Authority*

Relying on *Kinser*'s statement of the full-performance exception, the Court of Appeals believed that "[s]ince policyholders are not required to [renew their policies], and because the override depends and is calculated based on renewals that aren't guaranteed, we cannot say that the *only* thing left to do under the alleged oral agreement is for Financial Associates to pay the override fee." *Ed DeWitte Ins. Agency,* 53 Kan. App. 2d at 250. It then noted there did not "appear to be any Kansas cases that address whether a party has fully performed when the remainder of the contract is contingent on the actions of third parties." 53 Kan. App. 2d at 250-51.

Ultimately, the panel relied on *Lighthart v. Lindstrom*, 24 Ill. App. 3d 918, 322 N.E.2d 70 (1975). In *Lighthart*, a realtor claimed he was owed real estate commissions because he procured a tenant for the owner of a building. More specifically, the realtor claimed he was entitled to commissions on the lease that the tenant had renewed after the initial five-year lease term. The realtor invoked the full-performance exception for the renewal commissions. With little discussion, the Illinois Court of Appeals abruptly concluded: "The plaintiff did not 'perform' the act (viz: renewal) which made his commission due. He had nothing to do with the renewal . . . ." 24 Ill. App. 3d at 921. The court went on to hold the renewal could not be performed within one year, so it was barred by the statute of frauds. 24 Ill. App. 3d at 921-22.

*Lighthart* relied on *Zupan v. Blumberg*, 2 N.Y.2d 547, 141 N.E.2d 819, 161 N.Y.S.2d 428 (1957), which is commonly cited in this area of the law. There the court held:

> "A service contract of indefinite duration, in which one party agrees to procure customers or accounts or orders on behalf of the second party, is not by its terms performable, within a year—and hence must be in writing . . . since performance is dependent, not upon the will of the parties to the contract, but upon that of a third party." 2 N.Y.2d at 550.

See *Daup v. Tower Cellular, Inc.*, 136 Ohio App. 3d 555, 565, 737 N.E.2d 128 (2000) (relying on *Zupan*).

We disagree with these cases. First, the broader holdings in *Zupan* and *Lighthart* are incorrect under Kansas law. As discussed above, courts narrowly construe the one-year provision, excluding any contract from the statute of frauds unless the contract discloses that it cannot possibly be performed within one year. See, e.g., *In re Hargreaves*, 201 Kan. at 62 ("'Unless an oral agreement discloses it cannot be performed within the space of one year, we cannot say the agreement violates the provisions of the statute.'"); see also 4 Corbin on Contracts § 19.1, p. 572 ("[I]n general, the cases indicate that there must not be the slightest possibility that it can be fully performed within one year."). It is not difficult to imagine a situation in which an indefinite service contract of this kind could be fulfilled within one year. Indeed, the Missouri Supreme Court has criticized *Zupan* in the same manner. See *Crabb v. Mid-Am. Dairymen, Inc.*, 735 S.W.2d 714, 716 (Mo. 1987) ("[*Zupan*] seems to be on all fours, but it simply shows that New York takes a view of the statute of frauds different from the one consistently adhered to by the Missouri courts."). In the same vein, a Maryland court disapproved of *Lighthart*'s construction of the one-year provision:

21

"[*Lighthart*] held that the broker's claim for commissions was barred by the statute of frauds because '[i]n no way could it have been ascertained within the first year, that the lease would be renewed some five years later.' 322 N.E.2d at 72. This statement of Illinois law seems inconsistent with the Maryland rule that permits enforcement of an oral agreement that could, by any hypothesis, be performed within a year." *Griffith v. One Inv. Plaza Associates*, 62 Md. App. 1, 6-7, 488 A.2d 182 (1985).

More fundamentally, New York is in a significant minority because it recognizes neither the full-performance nor the part-performance exception to the statute of frauds. See *Gural v. Drasner*, 114 A.D.3d 25, 30, 977 N.Y.S.2d 218 (2013) ("'[N]othing short of full performance by both parties will take the contract [that cannot be performed within one year] out of the operation of the statute [of frauds]'"); 73 Am. Jur. 2d, Statute of Frauds § 418 ("In at least one state [New York], neither part performance nor full performance on one side will take an oral contract out of the one-year statute."). This raises the question:  Why would we rely on New York law to interpret an exception under Kansas law that does not exist under New York law?

Iowa, on the other hand, both follows the Restatement's version of the full-performance exception and narrowly construes their one-year provision. *Garland v. Branstad*, 648 N.W.2d 65, 71 (Iowa 2002) ("In deciding whether a particular oral contract is governed by the rule, the question is not whether performance must actually be completed within a year but whether it would be *possible* to perform the contract within that time frame."). The Supreme Court of Iowa has addressed the same question presented in this appeal. *Glass v. Minnesota Protective Life Ins. Co.*, 314 N.W.2d 393, 396 (Iowa 1982).

In *Glass*, an independent insurance agent wrote life insurance policies for an insurance company for 11 years. The agent was terminated when he refused to sign an agency contract requiring him to write life insurance policies solely for the insurance company. Following termination, the agent sued the insurance company, claiming that

22

when he began his employment, he entered into an oral agreement with the insurance company. The alleged agreement was that after 10 years of continuous employment, all the agent's commissions on policy renewals would be vested. This meant he or his spouse would receive renewal commissions for the remainder of their lives. The district court granted summary judgment in favor of the insurance company, holding the agreement was barred by the statute of frauds.

On appeal, the insurance company made the same argument Blue Cross and Financial Associates make here—the full-performance exception did not apply because the renewal commissions would not be owed unless the policyholders paid their premiums. After quoting section 130 of Restatement (Second) of Contracts, the court disagreed:

> "The applicability of the doctrine of full performance by one party, however, is not conditioned upon performance by third parties. Defendant's argument is based on a New York rule establishing a standard for determining whether a contract is performable within one year. See, e.g., *Zupan v. Blumberg*, 2 N.Y.2d 547, 161 N.Y.S.2d 428, 141 N.E.2d 819 (1957). Defendant also relies on *Lighthart v. Lindstrom*, 24 Ill. App. 3d 918, 322 N.E.2d 70 (1975), a case in which the New York rule was applied.

> "The New York and Illinois cases are distinguishable from this one in at least two respects. First, the full performance doctrine does not require the party's obligation to be performable within one year. See Restatement (Second) of Contracts § 130, comment d and illustration 14. Second, New York does not recognize the full performance doctrine. See *Montgomery v. Futuristic Foods, Inc.*, 66 A.D.2d 64, 411 N.Y.S.2d 371 (1978).

> "We adhere to our rule. The performance of policyholders in paying their premiums is a condition precedent to defendant's duty to pay renewal commissions. [Citation omitted.] That contingency does not, however, impose any additional obligation upon plaintiff. If his evidence is believed, he has fully performed." 314 N.W.2d at 396.

23

A recent federal court in the District of Kansas applied our full-performance exception in a similar fashion. In *The Superlative Group, Inc. v. WIHO, L.L.C.*, No. 12-1468-JWL, 2014 WL 1385533 (D. Kan. 2014) (unpublished opinion), a leasing company entered into a contract with Sedgwick County to find lessees for suites in the County's new arena in exchange for commissions from the County. A hockey team leased the arena and began to play games there. The leasing company and the hockey team orally agreed that the leasing company would sell season tickets as a condition of a suite lease and the hockey team would pay the leasing company a 20% commission on the season tickets sold to lessees.

When the hockey team stopped paying the 20% commissions, the leasing company filed a diversity action in federal court. The hockey team moved for summary judgment on the breach of contract claim, arguing K.S.A. 33-106 rendered the agreement unenforceable. Citing the more commonly stated full-performance exception to the statute of frauds, Judge Lungstrum denied the hockey team's motion for summary judgment:

> "[T]he Court concludes that the statute of frauds does not bar plaintiff's contract claim at this stage. The relevant Restatement section provides as follows: 'When one party to a contract has completed his performance, the one-year provision of the Statute [of Frauds] does not prevent enforcement of the promises of other parties.' *See* Restatement (Second) of Contracts § 130(2); *see also Augusta Bank & Trust v. Broomfield,* 231 Kan. 52, 59 (1982) (citing comment to Restatement Section 130). The Kansas Supreme Court has applied that principal that '[f]ull performance of an alleged oral contract [by one party] relieves a cause of action thereon from the inhibitions of the statute of frauds.' *See* [*In re Estate of Hargreaves*]*,* 201 Kan. 57, 62 (1968). In this case, the parties have stipulated that plaintiff leased its last suite for the arena in 2009, and defendant has not suggested that any aspect of performance by plaintiff remains lacking. Accordingly, viewing the facts in the light most favorable to plaintiff, the Court concludes that plaintiff has completed its performance of the alleged oral contract, and the statute of frauds therefore

24

does not apply. Defendant's motion for summary judgment is denied with respect to this claim." 2014 WL 1385533, at *2.

Other courts have reached similar conclusions. See *Fresh Capital Financial Services, Inc. v. Bridgeport Capital Services, Inc.*, 891 So. 2d 1142, 1145 (Fla. Dist. Ct. App. 2005) (party fully performed under the statute of frauds even though it was not owed a commission until after a client it had referred paid a fee); *American Chocolates, Inc. v. Mascot Pecan Co.*, 592 So. 2d 93, 94-95 (Miss. 1991) (plaintiff fully performed contract by securing customer for defendant, entitling it to the agreed-upon percentage of commissions on future sales from defendant to customer); see also *Linn v. Employers Reinsurance Corp.*, 397 Pa. 153, 157, 153 A.2d 483 (1959) ("Here the plaintiffs did all they had contracted to do, *i.e.*, they secured the reinsurance business for defendant under an agreement that they receive 5% of the premiums so long as the business continues. There was no requirement that the plaintiffs were to perform any other service. Defendant has thus received full performance from plaintiffs and cannot now be permitted to accept the benefits of its agreement while at the same time repudiate the obligations it assumed and has recognized for twenty-seven years.").

We side with these courts. The full-performance exception merely requires the full performance of one party. Simply because the policyholders may choose not to renew their policies places no additional obligation on the area managers—they have fully performed their end of the bargain. To this end, we formally adopt the full performance exception provided in §130 of the Restatement (Second) of Contracts. This seems the wisest course where our caselaw closely aligns with the Restatement, and we have already adopted its policy. See *Augusta Bank & Trust*, 231 Kan. at 59. Once again, the Restatement (Second) of Contracts § 130 provides:

> "(1) Where any promise in a contract cannot be fully performed within a year from the time the contract is made, all promises in the contract are within the Statute of Frauds until one party to the contract completes his performance.

25

"(2) When one party to a contract has completed his performance, the one-year provision of the Statute does not prevent enforcement of the promises of other parties."

For these reasons, we disapprove of the language to the contrary in *Richard* and *Kinser*, on which the Court of Appeals relied. Applying the exception here is straightforward. For over 20 years, Meador, Filley, and DeWitte worked as area managers for Financial Associates. They completed their employment and fulfilled their end of the bargain. The full-performance exception applies, and the alleged oral agreement is removed from the statute of frauds.

Before concluding, we wish to address some alternative arguments raised by the parties. All miss the mark, but we think it best to explain why.

In their response brief, Financial Associates and Blue Cross ask us to hold that to successfully assert the full-performance exception, the performing party's conduct must be "unequivocally referable to the agreement." *Smith v. Smith*, 541 S.W.3d 251, 262 (Tex. App. 2017). The flaw in this argument is obvious. Performance must be directly referable to the contract only when one party has partially performed his or her portion of the agreement. See 4 Corbin on Contracts § 18.11, p. 521; *Duradril, L.L.C. v. Dynomax Drilling Tools, Inc.*, 516 S.W.3d 147, 161 (Tex. App. 2017); see also *Hartshorn v. Smart*, 67 Kan. 543, 545, 73 P. 73 (1903) ("'[I]f the possession [of land] is not connected with the contract, but is referable to some other cause . . . or if it can be naturally and reasonably accounted for upon some supposition other than that of a contract, it will not be a part performance."); *Nay v. Mograin*, 24 Kan. 75, 79 (1880) ("Part performance to uphold a parol purchase must be exclusive; must be referable solely to such purchase.").

Blue Cross and Financial Associates' arguments highlight this point. In their responsive brief, they quote a concurrence from the Wyoming Supreme Court:

26

"If it were otherwise, every employment contract would be affected and at-will employment would be turned on its head. Allowing performance in the form of employment, to act as a bar to the statute of frauds would render the relevant provision of the statute of frauds meaningless. Any contract where the employee had begun work and received a paycheck would be protected from the application of that statute." *Wercs v. Capshaw*, 94 P.3d 421, 429 (Wyo. 2004) (Lehman, J., concurring).

Tellingly, the sentence that immediately precedes this quote is "'it is generally held that the *uncompleted part performance* of an oral contract for employment, not to be performed within 1 year, does not take the contract out of the statute of frauds.'" (Emphasis added.) 94 P.3d at 429 (Lehman, J., concurring). This case is about only the full-performance exception.

Next, Blue Cross and Financial Associates contend that because the district court denied the area managers' separate claims of unjust enrichment and promissory estoppel, we should not apply the full-performance exception. But a party who fully performs "may sue upon the contract in a court of law; he is not compelled to abandon the contract and sue in equity or upon a *quantum meruit*." *Gonder*, 132 Kan. at 638-39. We are not concerned with equity at this point.

Blue Cross and Financial Associates' final contention is that we should distinguish between contracts for "managerial services" and those for "personal services." By this they mean because the area managers did not personally procure the policies that serve as the foundation for the 1% override payments, their contracts are unlike ones we have recognized before. To that end, they cite a handful of cases when the party seeking to enforce the agreement provided a more proximate service in exchange for compensation. See generally *In re Hargreaves*, 201 Kan. 57; *Kinser*, 163 Kan. 725; *Richard*, 150 Kan. 579. But at the same time, we have sanctioned the full-performance exception in the context of an agreement to postpone marriage, *Nyburg*, 136 Kan. at 573-76, a consent to

27

adoption, *In re Shirk*, 186 Kan. at 327, and a promise not to contest a will, *Adams*, 168 Kan. at 576-78. Making such a fine distinction between "personal" and "managerial" contracts would be inconsistent with our caselaw, and we decline to do so here.

Finally, the area managers filed a Supreme Court Rule 6.09 letter shortly before oral arguments arguing for the first time that the oral agreement is enforceable because Stumpf admitted in his deposition that he entered into these oral agreements. See 2018 Kan. S. Ct. R. 39.

> "A letter of additional authority pursuant to Supreme Court Rule 6.09(b) (2013 Kan. Ct. R. Annot. 50) is reserved for citing significant relevant authorities not previously cited in the party's brief which come to the party's attention after briefing. Appellate courts will not consider new issues raised for the first time in a party's Rule 6.09(b) letter." *State v. Littlejohn*, 298 Kan. 632, Syl. ¶ 8, 316 P.3d 136 (2014).

We will not consider another exception to statute of frauds raised in a Rule 6.09(b) letter.

The judgment of the Court of Appeals and of the district court is reversed, and this case is remanded to the district court for further proceedings consistent with this opinion.